```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | |
|---|---|
| KATHY WELLS YORK and MELVIN BUDDY YORK, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  1:15cv412 ) |
| CITY OF BURLINGTON, a Municipal Corporation, HAROLD T. OWEN, in his official capacity as the City Manager of Burlington, THE BURLINGTON POLICE DEPARTMENT, JEFFREY SMYTHE, in his individual and his official capacity as Burlington Police Chief, CHRISTOPHER SMITH, in his individual and his official capacity as a Sergeant in the Burlington Police Department, CAMERON LEIGHT, in his individual and his official capacity as an Officer in the Burlington Police Department, and DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is an action for monetary and equitable relief arising out of the arrest of Plaintiff Kathy Wells York for larceny and resisting arrest and the associated seizure of her husband, Melvin Buddy York. Plaintiffs seek recovery under 42 U.S.C. § 1983 and on several State law grounds. Before the court is the motion for summary judgment by Defendants City of Burlington; Harold T. Owen,

its manager; Burlington Police Department ("BPD") officers Jeffrey Smythe, Christopher Smith, and Cameron Leight, sued variously in their official capacity, individual capacity, or both; and unnamed employees of the City of Burlington ("Does 1-10").[1] (Doc. 24.) The motion is fully briefed and ready for decision. For the reasons set forth below, the motion will be granted as to the federal claims, which will be dismissed. The court declines to exercise jurisdiction over the remaining State law claims, and the action will be remanded to State court for further proceedings.

I. BACKGROUND

The facts, viewed in the light most favorable to Plaintiffs as the non-moving parties, show the following[2]:

On April 29, 2012, BPD Officers Smith and Leight were called to a Belk department store in Alamance County by a store employee, Michelle Shamberger, who reported the taking of her purse by a customer. (Doc. 24-2 at 1; Doc. 24-3 at 2; Doc. 24-4 at 2-4.) Shamberger reported that, while she was in the stall in the ladies' restroom, a customer - later determined to be Mrs. York - exited her stall, washed her hands, and stood by the paper hamper as she

---

[1] Plaintiffs have since dismissed their claims against Defendant Smythe in his individual capacity and against the BPD. (Doc. 35 at 23, 25.) As to individual Defendants, this leaves claims against Smith and Leight in their individual and official capacities, and against Owen and Smythe in their official capacities.

[2] Nevertheless, Plaintiffs have stated they do not dispute the factual narrative recited by Defendants. (Doc. 35 at 3.)

2

dried her hands. (Doc. 24-2 at 1-2; Doc. 24-4 at 2-3.) As the customer left the restroom, Shamberger could see that her purse, which she had placed on the paper hamper, was now gone. (Doc. 24-4 at 3.) Shamberger called out to the woman, who did not stop. (Id.)

Shamberger worked with a store loss prevention specialist to determine what had happened to her purse. (Id.) After reviewing store videotapes, Shamberger identified Mrs. York as the woman in the bathroom when her purse disappeared. (Id.) Shamberger contacted the BPD. (Id.) Officers Leight and Smith responded to the call. (Doc. 24-2 at 1; Doc. 24-3 at 2; Doc. 24-4 at 3-4.)

Based on this information, Smith called the cellphone Shamberger had left in her purse. (Doc. 24-2 at 2; Doc. 24-3 at 3; Doc. 24-4 at 4.) A woman answered, but when Smith identified himself as a police officer, the call was disconnected. (Doc. 24-3 at 3.) A few minutes later, Shamberger's husband, who was standing next to Leight, received a return call from the cellphone that had been in Shamberger's purse. (Doc. 24-2 at 2.) The caller was a woman who stated that she had found a purse and cellphone and was going to return them to the store. (Id.; Doc. 24-3 at 3.) The woman stated that she would be arriving in a black Cadillac. (Doc. 24-2 at 2.)

Sometime later, a black Cadillac pulled up to the sidewalk outside the Belk store. (Id.) A woman, later identified as Mrs.

York, exited the vehicle. (Id.) Mrs. York approached Shamberger, who was standing near Leight, while Smith approached the car where Mr. York was waiting. (Id.; Doc. 24-3 at 3-4.) Mrs. York handed the purse to Shamberger, who confirmed that nothing was missing. (Doc. 24-2 at 2; Doc. 24-4 at 4.) At that point, Leight advised Mrs. York she was under arrest for larceny. (Doc. 24-2 at 2-3; Doc. 26-10 at 3.) Mrs. York turned, crossed her arms, and called out to her husband. (Doc. 24-2 at 3; Doc. 26-10 at 3-4.) According to Leight, Mrs. York also said, "No!" and backed away from the officer. (Doc. 24-2 at 3.) Leight put Mrs. York's arms behind her back, handcuffed her, and arrested her. (Id.; Doc. 26-10 at 3-4.) While Leight was arresting Mrs. York, Mr. York began to exit his vehicle. (Doc. 26-11 at 3.) Smith ordered Mr. York to remain in his vehicle, simultaneously closing the driver-side door and – according to Mr. York - verbally insulting Mr. York. (Doc. 24-3 at 4; Doc. 26-11 at 3-7.) Smith did not physically touch Mr. York, however. (Doc. 24-3 at 4; Doc. 26-11 at 5.)

Mrs. York was charged with misdemeanor larceny and misdemeanor resisting a public officer under North Carolina law. (Doc. 30-1 at 5.)

In her criminal trial, Mrs. York was convicted in a District Court trial on both the larceny and resisting arrest charges. (Doc. 30-3 at 5.) She appealed to the Superior Court for a trial de novo. (Id.) There, she moved, at the close of the State's

4

evidence and at the close of all the evidence, to dismiss both charges. (Doc. 24-9 at 2-8, 17.) The trial court denied each motion. (Id. at 11, 17-18.) Mrs. York was acquitted of the larceny charge but found guilty of resisting a public officer. (Doc. 30-1 at 5.) She was sentenced to 30 days in jail, suspended for 18 months upon her completion of 18 months of supervised probation, payment of a fine, completion of community service hours, and adherence to a ban on contacting Leight or visiting Belk during her probation. (Id.)

The North Carolina Court of Appeals vacated Mrs. York's conviction. State v. York, No. COA13-1147, 2014 WL 1384422, at *3-5 (2014). The court reasoned that Leight did not have the authority to arrest her, as the misdemeanor offense for which he arrested her – larceny – did not occur in his presence. Id. North Carolina law allows an officer to make a warrantless arrest for a misdemeanor committed outside of his presence if the suspect is likely to flee or is likely to damage a person or property. N.C. Gen. Stat. § 15A-401(b)(2). But the court held that the exceptions were inapplicable based on the facts of the arrest. York, 2014 WL 1384422, at *4.

This lawsuit followed. Plaintiffs filed the action in Alamance County Superior Court on April 7, 2015. (Doc. 1-1 at 7.) Plaintiffs contend that Defendants violated their rights under both State and federal law, advancing a total of three federal

5

claims and nine State law claims.[3]  (Id. at 12-20.)  Defendants removed the action to this court on the basis of federal question and supplemental jurisdiction.  (Doc. 1 at 2.)  They now move for summary judgment as to all claims on several grounds.  (Doc. 24.)

**II. ANALYSIS**

Summary judgment is appropriate where the pleadings, affidavits, and other proper discovery materials demonstrate that no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-33 (1986).  The party seeking summary judgment bears the burden of initially demonstrating the absence of a genuine dispute as to any material fact.  Celotex, 477 U.S. at 323.  If this burden is met, the non-moving party must then affirmatively demonstrate a genuine dispute of material fact which requires trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  There is no

---

[3] Plaintiffs' complaint sets forth a § 1983 claim for false arrest of Mrs. York, alleging a violation of her Fourth Amendment rights (Count One), a § 1983 claim for unreasonable seizure of Mr. York, alleging a violation of his Fourth Amendment rights (Count Eight), and a request to enjoin the City of Burlington to establish training procedures for its officers in order to deter constitutional violations (Count Twelve). The complaint contains the following State law claims: malicious prosecution for larceny (Count Two); malicious prosecution for resisting a public officer (Count Three); false imprisonment of Mrs. York (Count Four); intentional infliction of emotional distress (Count Five); assault and battery of Mrs. York (Count Six); special damages (Count Seven); false imprisonment of Mr. York (Count Nine); assault and battery of Mr. York (Count Ten); and punitive damages (Count Eleven).

6

issue for trial unless sufficient evidence favoring the nonmoving party exists for a factfinder to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 257 (1986). In addition, the nonmoving party is entitled to have the "credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him." Metric/Kvaerner Fayetteville v. Fed. Ins. Co., 403 F.3d 188, 197 (4th Cir. 2005) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)) (internal quotation marks omitted).

**A. Mrs. York's § 1983 Individual Capacity Claim**

Defendants argue that Mrs. York's § 1983 claim should be dismissed because Plaintiffs cannot prove that her constitutional rights were violated and that Leight and Smith are protected by qualified immunity. (Doc. 26 at 6-19.) Plaintiffs argue that Leight violated Mrs. York's rights because he did not have the authority to arrest her under North Carolina law and, furthermore, is not entitled to qualified immunity. (Doc. 35 at 4-12.)

"Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ridpath v. Bd. of Governors Marshall U., 447 F.3d 292, 306 (4th Cir. 2006) (quoting Wilson v.

7

Layne, 526 U.S. 603, 609 (1999)) (internal quotation marks omitted). Officials will receive immunity unless the § 1983 claim satisfies a two-prong test: (1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was "clearly established" such that a reasonable person would have known his acts or omissions violated that right. Id.; see also Saucier v. Katz, 533 U.S. 194, 201 (2001), modified by Pearson v. Callahan, 555 U.S. 223 (2009) (holding that courts need not first determine whether a plaintiff proves a constitutional violation); Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011).

The Supreme Court has held that qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (internal quotation marks and citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In other words, qualified immunity "protects law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" Willingham v. Crooke, 412 F.3d 553, 558 (4th Cir. 2005) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). Indeed, as the Fourth Circuit has explained:

> [i]f every mistaken seizure were to subject police
> officers to personal liability under § 1983, those same
> officers would come to realize that the safe and cautious
> course was always to take no action. The purposes of
> immunity are not served by a police force intent on
> escaping liability to the cumulative detriment of those
> duties which communities depend upon such officers to
> perform.

Gooden v. Howard Cty., Md., 954 F.2d at 960, 966–67 (4th Cir. 1992).

In her § 1983 claim (Count 1), Mrs. York alleges that Leight's warrantless arrest for a misdemeanor that did not occur in his presence violated N.C. Gen. Stat. § 15A-401 and thus her Fourth Amendment rights. (Doc. 4 at 6-7; Doc. 35 at 7-12, 14-16.) Plaintiffs point in support to the North Carolina Court of Appeals' decision overturning Mrs. York's conviction for resisting arrest on that ground. (Doc. 35 at 6-7.) As Defendants note, however, this precise argument is foreclosed by the Fourth Circuit's decision in Street v. Surdyka, 492 F.2d 368, 372–73 (4th Cir. 1974). (Doc. 26 at 10-11.)

In Street, the plaintiff sued under § 1983 for false arrest where Maryland law similarly authorized a misdemeanor arrest only if committed in the officer's presence. Street, 492 F.3d at 370-71. The court rejected the plaintiff's attempt to extend the Fourth Amendment to be coterminous with State law. While an officer violating Maryland law for conducting an arrest for a misdemeanor he did not witness may be liable for common law claims

of false arrest or false imprisonment, the court stated that "section 1983 does not provide a remedy for common law torts." Id. at 371. Consequently, States "are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right." Id. at 372. Quoting Justice Douglas, the court said that the question was not whether State law was violated, but "whether an inhabitant of a State had been deprived of a federal right by one who acts under 'color of any law.'" Id. at 371. Accordingly, the court held, "there is no cause of action for false arrest under section 1983 unless the arresting officer lacked probable cause." Id. at 372-73. Based on the claim before it, therefore, the court concluded, "We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence." Id. at 372.

Even with the facts viewed in a light most favorable to Plaintiffs, Leight plainly had probable cause to arrest Mrs. York for misdemeanor larceny. Probable cause exists when the facts and circumstances within an officer's knowledge, or the information he possesses that is reasonably trustworthy, are sufficient to convince an officer of reasonable caution that an offense has been or is being committed. Brown v. Gilmore, 278 F.3d 362, 367-68 (4th Cir. 2002); see also Gomez v. Atkins, 296 F.3d 253, 262 (4th Cir. 2002). Officers are given latitude in the determination of

probable cause, and a reasonable mistake of either fact or law will not subject the officer to liability. Saucier, 533 U.S. at 206-07 ("officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause"); Heien v. North Carolina, 135 S. Ct. 530 (2014) (finding Fourth Amendment permits reasonable mistakes of law as to whether conduct is illegal).

The elements of larceny under North Carolina law are that the defendant (1) took the property of another, (2) carried it away, (3) without the owner's consent, and (4) with the intent to deprive the owner of his property permanently. State v. Perry, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982), overruled on other grounds by State v. Mumford, 364 N.C. 394, 699 S.E.2d 911 (2010). The suspect must have had the intent to steal at the time she unlawfully takes the property from the owner's possession by an act of trespass. State v. Bowers, 273 N.C. 652, 655, 161 S.E.2d 11, 14 (1968). The intent to permanently deprive the owner of the stolen item, as an element of larceny, need not be established by direct evidence but can be inferred from the surrounding circumstances. N.C. Gen. Stat. § 14-72; State v. Hager, 203 N.C. App. 704, 692 S.E.2d 404 (2010).

Here, there is no dispute that the first three elements of larceny - (1) taking the property of another and (2) carrying it away (3) without the owner's consent, Perry, 305 N.C. at 233, 287

11

S.E.2d at 815 – were present. (Doc. 24-4 at 2-4.) Plaintiffs argue that the last element – intent to permanently deprive Shamberger of her property - is not met because Mrs. York brought the purse back to her in the presence of the officers. (Doc. 35 at 7-12, 15-16.) But the critical question is whether Leight had probable cause to believe that Mrs. York had the intent to permanently deprive Shamberger of her purse when she took it from the bathroom. Bowers, 273 N.C. at 655, 161 S.E.2d at 14. Based on the facts known to him, he objectively did. Shamberger had given Leight her account of yelling at Mrs. York to let go of her purse – to which Mrs. York failed to respond. (Doc. 24-2 at 1-2; Doc 24-4 at 3-4.) Leight reviewed the surveillance video showing Mrs. York leaving the mall with Shamberger's purse. (Doc. 24-2 at 2.) Leight also consulted with Smith, who had personally called Mrs. York on Shamberger's cell phone, and learned that Mrs. York hung up after Smith identified himself as a police officer. (Id.) And Mrs. York's explanation to Leight contradicted what Leight had observed on the surveillance video (id.). According to Leight, Mrs. York stated that she found the purse in the parking lot. (Id.) However, during his review of the surveillance video, Leight did not observe York pick up anything from the parking lot (id.), and Shamberger, of course, had told him that she observed Mrs.

York take the purse from the store bathroom (id. at 1–3).[4]

Therefore, because Leight had probable cause to arrest Mrs. York for misdemeanor larceny,[5] Defendants are entitled to summary judgment as to any claim for individual liability under § 1983 arising from Mrs. York's alleged false arrest (Count One). Street, 492 F.2d at 372–73.

**B.  Mr. York's § 1983 Individual Capacity Claim**

Mr. York argues that his Fourth Amendment rights were violated when Leight and Smith illegally seized him by ordering him to remain in his vehicle while Mrs. York was being arrested. (Doc. 35 at 16-18.)  Defendants contend they are entitled to summary judgment because these allegations do not establish a violation of a constitutional right.  (Doc. 26 at 7-11, 16-19, 28-30.)

The court assumes without deciding that Mr. York was seized when he was ordered to stay inside his vehicle. Brendlin v. California, 551 U.S. 249 (2007) (holding that a traffic stop subjects the driver and any passengers to Fourth Amendment

---

[4] Contrary to Plaintiffs' argument, the North Carolina Court of Appeals did not address whether Leight had probable cause to arrest York when vacating her conviction.  In fact, the court opined that "these facts might provide probable cause for Leight to believe that Defendant had indeed committed larceny." York, 2014 WL 1384422, at *4 (emphasis in original).

[5] Finding that probable cause existed as a matter of law, the court need not reach Defendants' alternative argument that Plaintiffs are collaterally estopped by the criminal case from disputing it. (Doc. 26 at 11-12.)

13

seizure). But even so, this seizure was neither unreasonable nor illegal. Numerous courts, including the North Carolina Supreme Court and the Fourth Circuit, have held that such orders are lawful under these circumstances. See United States v. Walker, 575 F. App'x 146 (4th Cir. 2014)[6] (holding that, following officer's lawful traffic stop of vehicle for having expired tags and no insurance, the officer had the authority to order defendant, a passenger, to remain inside the vehicle without having additional reasonable suspicion that he was engaged in criminal activity); State v. Shearin, 170 N.C. App. 222, 228-29, 612 S.E.2d 371, 377 (2005) ("[T]he United States Supreme Court has held that a police officer may order a passenger to exit a vehicle, as a safety precaution, without any suspicion that the individual has committed a crime. The same rationale may be applied when an officer orders an individual to remain in a vehicle." (citing Maryland v. Wilson, 519 U.S. 408, 412–15 (1997))); Coffey v. Morris, 401 F. Supp. 2d 542, 544-49 (W.D. Va. 2005) (holding that requiring a passenger to remain in the car during the lawful traffic stop of her son did not violate her Fourth and Fourteenth Amendment rights).

---

[6] Unpublished opinions of the Fourth Circuit are not precedential. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

Because Leight and Smith acted within their authority, Defendants enjoy qualified immunity as to this claim as a matter of law. The court will therefore grant Defendants' motion for summary judgment as to Mr. York's § 1983 claim alleging individual liability (Count Eight).

**C. Federal Official Capacity Claims**

Plaintiffs contend that the City of Burlington is liable under Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978), based principally on a failure to train theory as well as "policy or practice" of the BPD to conduct improper arrests. (Doc. 35 at 18-20, 24-25.) In advancing their argument, Plaintiffs invite the court to examine the personnel records of Leight and Smith. But the court need not venture down that path. As Defendants note, Plaintiffs' failure to show any violation of their constitutional rights dooms their official capacity claims for damages because "supervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages." Waybright v. Frederick Cty., 528 F.3d 199, 203 (4th Cir. 2008) (quoting City of L.A. v. Heller, 475 U.S. 796, 799 (1986)); see also Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012) ("Because we hold that all plaintiffs failed to state predicate § 1983 claims against the individual officers, we must also hold that all plaintiffs have failed to state supervisory

15

liability."); Young v. City of Mt. Ranier, 238 F.3d 567, 579 (4th Cir. 2001) ("The law is quite clear . . . that a section 1983 failure to train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee.").

Plaintiffs' failure to demonstrate a cognizable claim against the officer Defendants therefore precludes a damages claim for supervisory liability.

**D.    Federal Injunctive Relief Claim**

Plaintiffs also seek injunctive relief against the governmental Defendants under § 1983.  (Doc. 1-1 at 19-20.)  In particular, Plaintiffs argue "it might prove appropriate for the court to order Chief Smythe to implement a meaningful training protocol for officers, revise its policies concerning arrests, or implement meaningful discipline when an officer has illegally arrested a citizen."  (Doc. 35 at 24.)  Defendants contend that Plaintiffs lack standing to raise a claim for injunctive relief and further lack sufficient facts to demonstrate an entitlement to it.  (Doc. 26 at 29-30.)  The court agrees with Defendants that Plaintiffs have not shown they have standing to assert this claim.

It is a fundamental precept that in order to invoke the jurisdiction of the federal courts, a plaintiff must meet the threshold requirement of Article III of the Constitution by alleging an actual case or controversy.  City of Los Angeles v.

Lyons, 461 U.S. 95, 111 (1983). Consequently, a plaintiff must "'allege[ ] such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498–99 (1975) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). In the context of a claim for injunctive relief, while an individual need not subject herself to actual arrest or prosecution, she must nevertheless demonstrate an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; "a causal connection between the injury and the conduct complained of"; and redressability of the injury by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted). This requires a plaintiff to show a "substantial risk" that harm will occur to him or her. Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014). Here, Plaintiffs have not done so.

As noted, Plaintiffs have not even shown a constitutional violation. The mere fact that they have been detained once before under the circumstances of this case - even assuming they could establish some liability under Monell[7] - does not demonstrate that they are any more likely than any other citizen to be detained in

---

[7] Monell applies to § 1983 claims for injunctive relief. L.A. Cty., Cal. v. Humphries, 562 U.S. 29 (2010).

the future for a suspected misdemeanor larceny. Lyons, 461 U.S. at 111 (concluding that past injury by police, "while presumably affording [plaintiff] standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat" of future injury to him); Rapa v. City of N.Y., No. 15-CV-1916 JMF, 2015 WL 5671987, at *3 (S.D.N.Y. Sept. 25, 2015) (finding one past incident involving plaintiff insufficient to demonstrate likelihood of future harm to him, even if police department had "policy or practice" under Monell causing it to commit unconstitutional acts).

Plaintiffs' claim for an injunction therefore fails because of their inability to show standing, and Count Twelve will be dismissed.[8]

**E. Remaining State Law Claims**

Plaintiffs' remaining claims (Counts Two through Seven and Nine through Eleven) are all based on North Carolina law. Under 28 U.S.C. § 1367(c), a federal district court "may decline to exercise supplemental jurisdiction" over State-law claims if "the district court has dismissed all claims over which it has original jurisdiction." The Fourth Circuit has noted in a similar circumstance that "[w]ith all its federal questions gone, there

---

[8] Because Plaintiffs lack standing to raise this claim, and because the remaining claims were dismissed on other grounds, the court need not reach Plaintiffs' arguments as to any basis for liability under Monell.

18

may be the authority to keep [the case] in federal court[,] . . . but there is no good reason to do so." Waybright v. Frederick Cty., Md., 528 F.3d 199, 209 (4th Cir. 2008). Because this court will dismiss all of Plaintiffs' federal claims and there is no other identified basis of subject matter jurisdiction, the court declines to exercise supplemental jurisdiction over their State law claims. Plaintiffs' remaining State law claims will therefore be remanded to the General Court of Justice, Superior Court Division, of Alamance County, North Carolina. Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (recognizing that "the remand power [is] inherent in the statutory authorization to decline supplemental jurisdiction under § 1367(c)").

## III. CONCLUSION

For the reasons stated, the court finds that Defendants are entitled to summary judgment on Plaintiffs' federal claims.

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (Doc. 24) is GRANTED IN PART as to Plaintiffs' federal claims (Counts One, Eight, and Twelve), which are DISMISSED WITH PREJUDICE. Defendants' motions for summary judgment as to Plaintiffs' remaining claims under North Carolina law are DENIED WITHOUT PREJUDICE, and the action is REMANDED to the General Court of Justice, Superior Court Division, of Alamance County, North Carolina, for further proceedings.

```
                                      /s/    Thomas D. Schroeder
                                     United States District Judge
December 22, 2016
```